Feters, J.E
Appeal from an order of the Family Court of Broome County (Fines, J.), entered January 23, 2008, which granted petitioner’s application, in a proceeding pursuant to Family Ct Act article 10, for modification of a prior order of disposition.
Respondent is the parent of two children, Marjorie (born in 1991) and Hobb (born in 1993). In the underlying Family Ct Act article 10 proceeding, the children were adjudicated to be neglected as a result of admissions by respondent that he, among other things, used excessive corporal punishment upon the children, physically and verbally abused them, engaged in excessive alcohol consumption and used illegal drugs in their presence. Family Court’s dispositional order placed the children in the custody of petitioner, directed respondent to participate in substance abuse, mental health and anger management counseling, and granted him visitation with the children twice a month. Less than a month later, petitioner commenced the instant proceeding seeking to modify the dispositional order by suspending visitation between respondent and Marjorie, alleging that the child’s visits with respondent had precipitated self-mutilating behavior. Following a fact-finding hearing and an in *999 camera hearing with both children, Family Court suspended respondent’s visitation with the children. This appeal ensued.
Respondent argues that Family Court erred in denying him any visitation with the children. We begin by noting that “[w]hether visitation is appropriate is a matter left to Family Court’s sound discretion and its findings, to which deference is to be accorded, will not be disturbed on appeal unless they lack a sound basis in the record” (Matter of Shawn Y., 263 AD2d 687, 688 [1999] [citation omitted]; see Matter of Shaun X., 300 AD2d 772, 773 [2002]). While “denial of visitation to a biological parent must be based on compelling reasons and substantial evidence that such visitation would be detrimental or harmful to the child’s welfare[,] . . . the rights of a parent are subordinate to the policy of protecting a child from a parent who is incapable or unwilling to perform his or her parental responsibilities” (Matter of Sullivan County Dept. of Social Servs. v Richard C., 260 AD2d 680, 682 [1999], lv dismissed 93 NY2d 958 [1999] [citations omitted]; accord Matter of Victoria X., 34 AD3d 1117, 1118 [2006], lv denied 8 NY3d 806 [2007]; see Matter of Shaun X., 300 AD2d at 773). Accordingly, the paramount issue in determining whether visitation should be permitted by a parent who has committed neglect is the best interests of the children (see Matter of Tanya T., 252 AD2d 677, 679 [1998], lv denied 92 NY2d 812 [1998]), “and an inquiry into the child[ren’s] best" interest[s] involves consideration of the parent’s ability to supervise the child[ren] and any potential threat of future abuse or neglect” (Matter of Kathleen OO., 232 AD2d 784, 786 [1996]; accord Matter of Victoria X., 34 AD3d at 1118).
We find ample support in the record for Family Court’s denial of visitation to respondent. At the fact-finding hearing, petitioner’s caseworker testified that she observed a deep cut on Marjorie’s wrist following a visit with respondent and that Marjorie confided that it was self-inflicted, that her visit with respondent had provoked it and that she no longer wished to continue visitation with respondent. Concerned about this revelation, the caseworker spoke to Marjorie’s counselor at Crime Victim Assistance Center who, after a session with Marjorie, wrote a letter relating that Marjorie expressed that she engaged in self-mutilating behavior in order to calm herself down when around respondent, and concluded that future visits with respondent presented a continuing risk that she would harm herself. Further, the caseworker testified that Hobb had been threatening to “blow up the place” and kill members of petitioner’s staff and its residents and that, upon questioning him about this behavior, Hobb stated that respondent had *1000 instructed him to kill petitioner’s staff and residents as well as how to do so. According to the caseworker, Hobb expressed his fear of respondent and the things he asked him to do, and no longer wished to visit with him. Although respondent contends that the caseworker’s testimony and the letter written by Marjorie’s counselor constitute inadmissible hearsay, he failed to preserve this issue by timely objection.
The children’s in camera testimony, which Family Court found to be “extremely credible, compelling as well as extremely troubling,” fully corroborated the caseworker’s testimony and substantiated the damaging effects of ongoing visitation with respondent, as did a letter that Marjorie herself wrote to the court in which she detailed respondent’s threatening conduct, her fear of being physically harmed by him and her desire not to have contact with him in the future. While respondent argues that Marjorie’s testimony and allegations against him are unworthy of belief, Family Court had the opportunity to observe her demeanor first hand as she testified during the in camera hearing, and we accord great deference to its finding that she was credible (see Matter of Ida EE., 31 AD3d 923, 925 [2006]; Matter of Nathaniel TT., 265 AD2d 611, 614 [1999], lv denied 94 NY2d 757 [1999]). The record also contains evidence that both children suffer from mental health problems, that respondent lacks insight into the severity of Hobb’s emotional and mental difficulties and that respondent disavowed engaging in conduct that he had expressly admitted to in the underlying neglect proceeding. Thus, Family Court’s decision to suspend respondent’s visitation with the children was fully supported by the record and did not constitute an abuse of discretion (see Matter of Shaun X., 300 AD2d at 773; Matter of Ashley D., 268 AD2d 803, 806 [2000], lv denied 94 NY2d 763 [2000]; Matter of Tanya T., 252 AD2d at 679-680).
Respondent’s remaining contentions are unpreserved.
Rose, Lahtinen, Kane and Malone Jr., JJ., concur. Ordered that the order is affirmed, without costs.